J-S23027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL CALLAHAN | : | |
| | : | |
| Appellant | : | No. 2569 EDA 2023 |

Appeal from the PCRA Order Entered September 13, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001168-2015

BEFORE:    STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                **FILED NOVEMBER 19, 2024**

Appellant, Paul Callahan, appeals *pro se* from the order entered in the Bucks County Court of Common Pleas, which dismissed as untimely his second petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant was charged with various offenses related to the sexual assault of the three young daughters of his live-in girlfriend.  At trial, T.S. testified that when she was 10 or 11 years old, Appellant entered her room at night, got on top of her, and engaged in sexual intercourse with her.  This occurred again on at least two other occasions.  H.S. testified that when she was 12 years old, Appellant put his hand down her pants and touched her vagina.  On other

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-46.

occasions, Appellant touched her breasts and vagina and exposed himself to her. K.S. testified that Appellant first assaulted her when she was 9 years old when they were home without anyone else present. Appellant told her to get undressed, put his mouth on her vagina, and engaged in sexual intercourse with her. In February of 2011, when K.S. was 10 years old, her mother observed Appellant interacting with K.S. in a suspicious way and asked K.S. what happened. K.S. told her mother that Appellant had put his finger inside her vagina. K.S.'s mother called the police, and they took K.S. to the hospital.

A Sexual Assault Nurse Examiner ("SANE") examined K.S. and collected a sexual assault kit, which included swabs of various areas of K.S.'s body. The swabs were later sent to NMS Labs for analysis. Forensic biologist, Thomas Walsh, testified that he analyzed K.S.'s sexual assault kit. He performed serology testing on the vaginal, oral, rectal, vulva and perianal swabs taken from K.S. Serology testing is used to identify bodily fluids in a sample, including saliva, seminal fluid and sperm cells. The rectal, vulva, and perianal swabs tested positive for saliva. On these swabs, Mr. Walsh performed further DNA testing. Specifically, Mr. Walsh performed Y-STR testing, which specifically targets male DNA. Male DNA was found in the vulva and perianal swabs and a DNA profile was created for comparison with Appellant's DNA profile. Mr. Walsh explained that for the perennial sample, he only obtained data at two of the 18 locations analyzed for comparison to a reference sample, which is the minimum data required to conduct a comparison. For the partial DNA profile from the perianal sample, Appellant was excluded as a source of

that sample, which could mean that Appellant was not present or that there was insufficient data. The partial DNA profile created from the vulva swab contained much more data for comparison and was consistent with Appellant. Mr. Walsh explained that this meant the DNA profile could have come from Appellant, his paternally related male relatives, or an unknown number of males in the general population.

During cross-examination, Mr. Walsh acknowledged that with serology testing, the presence of other substances such as fecal matter could produce a positive result for saliva. He further stated that DNA could have transferred from clothing as a possible explanation for how Appellant's DNA could have been present in intimate areas of K.S.'s body. Additionally, Mr. Walsh acknowledged that the Y-STR DNA testing could not conclusively identify Appellant as the source of the DNA sample from K.S.'s vulva but only confirm that Appellant, his paternally related male relatives and an unknown number of males in the general population could not be excluded as the source of the sample.

On April 30, 2015, the jury convicted Appellant of one count of involuntary deviate sexual intercourse with a child, two counts each of rape of a child and aggravated indecent assault of a child, and three counts each of indecent assault of a child and unlawful contact with a minor. On September 2, 2015, the trial court imposed an aggregate sentence of 106 to 212 years' incarceration and determined that Appellant met the criteria to be designated as a sexually violent predator ("SVP"). Appellant filed a timely post-sentence

motion on September 11, 2015. The court granted Appellant's motion in part and resentenced Appellant to an aggregate 63½ to 127 years' incarceration on February 3, 2016. On December 22, 2017, this Court affirmed in part and vacated in part his judgment of sentence,[2] and our Supreme Court denied Appellant's petition for allowance of appeal on July 2, 2018. **See Commonwealth v. Callahan**, No. 621 EDA 2016 (Pa.Super. Dec. 22, 2017) (unpublished memorandum), *appeal denied*, 647 Pa. 171, 188 A.3d 1110 (2018) ("**Callahan I**").

On February 28, 2019, Appellant filed his first PCRA petition, alleging *inter alia*, that trial counsel was ineffective for failing to call Katerine Cross as an expert witness in DNA analysis. The PCRA court denied the petition on June 30, 2020. On September 9, 2021, this Court affirmed the denial of PCRA relief, and our Supreme Court denied Appellant's petition for allowance of appeal on February 22, 2022. **See Commonwealth v. Callahan**, No. 1381 EDA 2020 (Pa.Super. Sep. 9, 2020) (unpublished memorandum), *appeal denied*, ____ Pa. ____, 273 A.3d 505 (2022) ("**Callahan II**").

On April 12, 2022, Appellant filed the instant *pro se* PCRA petition alleging, in relevant part, that his trial counsel and first PCRA counsel provided ineffective assistance for failing to properly challenge the Commonwealth's DNA expert. Appellant further alleged that he satisfied the governmental

---

[2] Pursuant to **Commonwealth v. Butler**, 173 A.2d 1212 (Pa.Super. 2017), *rev'd*, 657 Pa. 579, 226 A.3d 972 (2020), this Court concluded that Appellant's sentence was illegal insofar as the trial court found him to be an SVP.

interference exception to the PCRA time-bar because his first PCRA counsel and trial counsel failed to pursue a claim regarding the "DNA report [which] shows [Appellant]'s actual innocence" which was never shown to the jury at trial. (PCRA Petition, filed 4/12/22, at 3). Appellant further claimed that the DNA report was a newly discovered fact. On August 4, 2022, the PCRA court issued notice of its intent to dismiss the petition without a hearing per Pa.R.Crim.P. 907, concluding that the PCRA petition was untimely filed, and Appellant's claims had been previously raised.

On August 15, 2022, Appellant filed a response claiming that there was newly discovered evidence in his case. He attached an affidavit authored by Ms. Cross, dated 8/12/22, which noted the following issues with the DNA analysis evidence presented at Appellant's trial: 1) A short tandem repeat (STR) test should have been done for DNA analysis because the Y-STR test is only specific to males and is not specific to an individual but to a male family line; 2) The RSID test used to detect saliva is a presumptive test and a number of other substances such as urine, bacteria and fecal matter can cause a false positive; 3) Appellant's cells could have transferred to the victim from objects such as clothing and towels in a shared residence and not from direct contact between Appellant and the victim; 4) The Texas Forensic Science Commission issued a report on April 20, 2018, that was critical of NMS Labs' testing and interpretation of DNA results in a rape case in Texas.

On August 23, 2022, Appellant filed another motion, requesting the court to appoint counsel and schedule an evidentiary hearing. Appellant also

attached a copy of the Texas Forensic Science Commission Report ("Texas Report") that was referenced in Ms. Cross' affidavit.

On December 19, 2022, the PCRA court appointed counsel, specifically instructing counsel to inquire into whether Appellant's responses to the court's Rule 907 notice satisfied an exception to the PCRA time-bar. On April 10, 2023, Appellant's counsel filed a **Turner/Finley** "no merit" letter and a petition to withdraw as counsel.[3] On July 3, 2023, the court granted counsel's petition to withdraw and issued another Rule 907 notice. Appellant filed a response to the Rule 907 notice on July 21, 2023, largely reasserting claims made in prior responses. The court dismissed Appellant's PCRA petition on September 13, 2023. Appellant filed a timely notice of appeal on October 3, 2023. On October 17, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, and Appellant complied on October 30, 2023.

Appellant raises the following issues for our review:

1. The first issue before this Court is whether the Bucks County District Attorney's Office was involved in a pattern and practice of misconduct concerning the NMS Labs' DNA testing and reports. Specifically, whether they were aware or should have been aware of the incompetence of NMS Labs in processing criminal DNA testing, and failed to reveal this incompetence to [Appellant]. Additionally, whether NMS Labs incompetently handled [Appellant]'s case by redacting notes from his report, failing to follow protocols, and

---

[3] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

failing to conduct proper testing. This issue also raises concerns about government interference.

2. The second issue is whether the Bucks County District Attorney's Office engaged in government interference during [Appellant]'s second PCRA by failing to disclose the negligence and wrongful processing of the lab reports and testing. This is alleged to be a **Brady**[4] violation, where reasonable diligence was thwarted, and whether this is necessary to allege and prove pursuant to Third Circuit precedent.

3. The third issue pertains to the evidence provided by Katherine Cross, a renowned DNA forensic biologist. Her supplemental affidavit illustrates the wrongdoing on NMS Labs, including redacted notes, altered information, and deviations from established policies and protocols and testing. This issue highlights the fact that this evidence was not previously litigated due to a lack of access to complete records from [Appellant]'s trial counsel, David Knight.

4. The fourth issue centers on [Appellant]'s assertion that his [trial counsel], David Knight, believed the jury found him guilty based on DNA evidence. … This raises an [inference] that the outcome could have been different if the NMS [Labs] expert had been impeached by calling Katherine Cross and conducting a thorough cross-examination to expose that incorrect testing was performed, and that lab notes and information was altered.

5. The fifth issue revolves around whether [Appellant] should have been granted an evidentiary hearing pursuant to **Commonwealth v. Angel Echeverria**[, No.] 500 EDA 2021 [(Pa.Super. February 24, 2022), (unpublished memorandum), *appeal denied*, ___ Pa. ___, 284 A.3d 117 (2022).] This is in support of his argument that newly discovered evidence should not be summarily dismissed without a hearing. [Appellant] contends that new facts were unknown to him and were not previously

_____

[4] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

litigated.

6. The final issue concerns the alleged ethical and competency breach by [Appellant's appointed counsel for the instant PCRA petition], Bonnie Keaggy. [Appellant] claims that [Attorney] Keaggy repeatedly admonished his family members for inquiring about his case, did not inform him of her phone call with Katherine Cross or the outcome of that call, and made no reference to the governmental interference claim raised by [Appellant] concerning the Bucks County District Attorney's Office and NMS Labs.

(Concise Statement of Matters Complained of on Appeal, filed 10/30/23, at 1-4) (unpaginated).[5]

As a prefatory matter, we observe that the timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Zeigler*, 148 A.3d 849 (Pa.Super. 2016). A PCRA petition, including a second or subsequent petition,

_____

[5] On April 4, 2024, Appellant filed an application for relief with this Court, in which he included a "draft brief" and requested this Court to appoint counsel. On April 26, 2024, this Court denied Appellant's request for counsel and accepted Appellant's "draft brief" as a timely filed appellate brief. The statement of questions presented section of Appellant's brief states: "Appellant incorporates his five (5) issues stated in the Matters Complained on Appeal. See 1925(b) statement." (Application for Relief, filed 4/5/24, at 12) (unpaginated). Appellant's Rule 1925(b) statement lists six issues and Appellant does not further identify which five issues he wishes to pursue on appeal. As such, we have reproduced all six issues Appellant raised in his Rule 1925(b) statement. We note that Appellant's failure to specify these issues in the statement of questions involved could constitute waiver on appeal. *See* Pa.R.A.P. 2116(a) (stating: "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); Pa.R.A.P. 2101 (stating that this Court may find waiver where briefs fail to conform with requirements of rules and defects are substantial). Nevertheless, based on our disposition, we decline to find waiver on this ground.

shall be filed within one year of the date the underlying judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

Instantly, following Appellant's direct appeal, our Supreme Court denied allowance of appeal on July 2, 2018. Appellant's judgment of sentence became final 90 days later, on or about September 30, 2018. *See* U.S.Sup.Ct.R. 13 (stating appellant must file petition for writ of certiorari with United States Supreme Court within 90 days after entry of judgment by state court of last resort). Thus, Appellant had until September 30, 2019 to file a timely PCRA petition, and his current PCRA petition filed on April 12, 2022 is facially untimely. *See* 42 Pa.C.S.A. § 9545(b)(1).

To obtain merits review of a PCRA petition filed more than one year after the judgment of sentence became final, the petitioner must allege and prove at least one of the three timeliness exceptions:

> (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 9 -

(iii)     the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).  Additionally, a PCRA petitioner must file his petition within one year of the date the claim could have been presented.  42 Pa.C.S.A. § 9545(b)(2).

To meet the "newly discovered facts" timeliness exception set forth in Section 9545(b)(1)(ii), a petitioner must demonstrate "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015).  Due diligence demands that a PCRA petitioner take reasonable steps to protect his own interests. *Id.*  "The focus of the exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Burton*, 638 Pa. 687, 704, 158 A.3d 618, 629 (2017) (internal citation and quotation marks omitted).  In other words, the fact that a petitioner has "discovered yet another conduit" for the same claim previously presented "does not transform his latest source into evidence falling within the ambit of section 9545(b)(1)(ii)." *Commonwealth v. Maxwell*, 232 A.3d 739, 745 (Pa.Super. 2020) (*en banc*), *appeal denied*, 663 Pa. 511, 242 A.3d 1290 (2020) (quoting *Commonwealth v. Marshall*, 596 Pa. 587, 597, 947 A.2d 714, 720 (2008)).

"The proper question with respect to [the governmental interference] timeliness exception is whether the government interfered with Appellant's ability to present his claim and whether Appellant was duly diligent in seeking the facts on which his claims are based." *Commonwealth v. Chimenti*, 218 A.3d 963, 975 (Pa.Super. 2019), *appeal denied*, 658 Pa. 538, 229 A.3d 565 (2020) (internal citation omitted). Where a petitioner's allegation of governmental interference is based on an alleged *Brady* violation, "the proper questions with respect to timeliness in this case are whether the government interfered with Appellant's access to the [allegedly withheld evidence], and whether Appellant was duly diligent in seeking [that evidence]." *Commonwealth v. Stokes*, 598 Pa. 574, 581, 959 A.2d 306, 310 (2008).

Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335 (Pa.Super. 2012).

Here, Appellant asserts that he has satisfied the newly discovered fact and governmental interference exceptions to the PCRA's time-bar. Specifically, Appellant argues that Ms. Cross' review of the DNA analysis performed by Mr. Walsh and the affidavits listing her concerns about Mr. Walsh's testimony constitute new facts to overcome the PCRA time-bar. Initially, we note that Ms. Cross first became involved with Appellant's case

before Appellant's trial. Ms. Cross reviewed the DNA expert report and assisted Appellant's trial counsel to prepare for Mr. Walsh's testimony by providing a set of questions and expected answers. As such, her review of the DNA expert report and any deficiencies she observed with Mr. Walsh's analysis cannot constitute "new" facts that Appellant was unable to discover sooner with the exercise of due diligence.[6] *See Brown, supra*.

Appellant further claims that Ms. Cross did not have access to certain documents that she requested during her initial review of Appellant's case, and her findings after reviewing these documents constitute newly discovered facts. In support of this claim, Appellant relies on a supplemental affidavit authored by Ms. Cross, dated 2/27/23. In this affidavit, Ms. Cross stated that prior to Appellant's trial, she reviewed Appellant's case file, DNA interpretation guidelines, and DNA testing protocols. She further listed four additional documents that she requested for review but did not receive. Ms. Cross does not indicate whether she ever received these additional documents or drew any additional conclusions from reviewing them. Ms. Cross does, however,

_____

[6] In fact, the issues Ms. Cross identified in her 8/12/22 affidavit were previously identified by her in preparation for Appellant's trial and in the report she authored to support Appellant's prior PCRA petition. In examining a claim that trial counsel was ineffective for failing to call Ms. Cross as an expert witness, this Court previously noted that Ms. Cross' report "contains no evidence that was not presented to the jury." *See Callahan II, supra*, at 4. As such, the mere fact that Ms. Cross restated her prior conclusions in her 8/12/22 affidavit does not transform the previously known information into newly discovered facts. *See Maxwell, supra.*

- 12 -

indicate that on February 16, 2023, she received and reviewed Mr. Walsh's testimony at Appellant's trial and listed four issues she identified with Mr. Walsh's testimony and NMS Labs. All four issues listed were identified in her prior review of the case and included in the set of questions and expected answers she prepared for Appellant's trial counsel.[7] As such, Ms. Cross' 2/27/23 affidavit does not support Appellant's assertion that Ms. Cross discovered new errors in Appellant's case after reviewing documents that she did not previously have. Additionally, even if Ms. Cross' findings were newly discovered after reviewing additional documents, Appellant fails to aver that he undertook any efforts to provide these documents to Ms. Cross prior to the expiration of time to file a timely PCRA petition. As such, Appellant has failed to establish that Ms. Cross' affidavits contain any newly discovered facts that were not or could not have been ascertained at an earlier date through the exercise of due diligence. **See Brown, supra**.

Appellant also claims that the Texas Report that found errors in NMS Labs' testing of DNA evidence for an unrelated case constitutes newly discovered facts. However, Appellant fails to demonstrate any connection between the Texas Report and his case other than the fact that the report was critical of NMS Labs. The Texas Report identified an issue in cases where an amplification inhibitor was present, which could result in the failure to develop

---

[7] Ms. Cross attached a copy of the questions and expected answers she prepared for Appellant's trial counsel to the 2/27/23 affidavit.

DNA profiles from samples or reveal additional low-level contributors in a mixed sample. Nothing in the record indicates that this was an issue in Appellant's case. Ms. Cross, who noted in her affidavit that the Texas Report was critical of NMS Labs, did not state that any of the errors noted in the Texas Report were present in Appellant's case. Additionally, there is no indication that any of the analysts whose competency was questioned in the Texas Report were involved in Appellant's case. As such, Appellant failed to establish that the Texas Report is a newly discovered fact that supports a claim entitling Appellant to relief. *See Commonwealth v. Ruiz*, No. 1102 EDA 2023 (Pa.Super. filed June 11, 2024) (unpublished memorandum)[8] (explaining that there must be "some relationship" between alleged newly-discovered fact and claims asserted by petitioner; appellant did not satisfy newly-discovered fact exception where he did not explain how allegations concerning misconduct of certain police detectives were specifically related to his case).

With respect to his claim that he satisfied the governmental interference exception to the PCRA time-bar, Appellant alleges "[t]he Bucks County District Attorney's Office [("DA's Office")] had the responsibility to correct its misconduct and learn of NMS [Labs] violating its own protocols, conducting wrong testing and altering case notes and reports." (Application for Relief, at

_____

[8] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

20) (unpaginated). Appellant appears to be asserting that the DA's Office somehow interfered with his right to present his PCRA claim because it relied on NMS Labs' DNA analysis in Appellant's case. Appellant also loosely suggests that the DA's Office's failure to notify Appellant of NMS Labs' alleged misconduct in his case amounts to a *Brady* violation. Nevertheless, Appellant fails to explain his argument in any meaningful way or support his assertions with any relevant authority. As such, Appellant has waived this claim. *See Commonwealth v. Freeman*, 128 A.3d 1231 (Pa.Super. 2015) (holding appellant's failure to develop coherent legal argument in support of his claim resulted in waiver of issue on appeal).[9] On this record, the PCRA court did not err in dismissing Appellant's petition without an evidentiary hearing.[10]

_____

[9] Appellant further makes vague claims that PCRA counsel provided him with ineffective assistance. To the extent that Appellant is arguing that PCRA counsel's alleged ineffectiveness satisfies an exception to the PCRA time bar based on our Supreme Court's decision in *Commonwealth v. Bradley*, ___ Pa. ___, 261 A.3d 381 (2021), that decision affords him no relief. *See Commonwealth v. Stahl*, 292 A.3d 1130, 1136 (Pa.Super. 2023) (holding that *Bradley* does not create right to file subsequent PCRA petition outside PCRA's one-year time limit as method of raising ineffectiveness of PCRA counsel or permit recognition of such right).

[10] Appellant cites to *Echevarria* to support his claim that the court erred in dismissing his petition without an evidentiary hearing. However, in *Echevarria*, this Court ultimately concluded that the appellant failed to plead sufficient facts to demonstrate the newly discovered facts exception and as such, the PCRA court did not abuse its discretion in dismissing the appellant's petition without a hearing. *See Echevarria, supra* at 3-4. Accordingly, *Echevarria* does not support Appellant's claim but rather supports our conclusion that the PCRA court did not err in dismissing Appellant's petition without a hearing.

***See Wah, supra***.  Therefore, Appellant's PCRA petition remains time barred. Accordingly, we affirm the PCRA court's order dismissing Appellant's petition as untimely.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/19/2024